[Civ. No. 16969. First Dist., Div. One. Nov. 5, 1956.]

JOHN J. KERR, Respondent, v. KEY SYSTEM TRANSIT LINES (a Corporation) et al., Appellants.

Donahue, Richards, Rowell & Gallagher for Appellants.

Nichols, Richard, Williams, Morgan & Digardi, Jesse Nichols, Anthony R. Brookman and T. L. Christianson for Respondent.

BRAY, J.—Defendants appeal from a judgment on a jury verdict in favor of plaintiff in the sum of $9,000. The sole question raised is that three instructions (two on res ipsa loquitur, and one on the duty of a common carrier) were erroneous.

## FACTS

Plaintiff was a passenger on a Key System bus going south on Washington Street, Oakland. The bus stopped at the near

side of 12th Street because of railroad tracks. Plaintiff stood up to ring the bell to indicate that he desired to get off the bus on the far side of that street. He testified that the bus started with such a jerk that he lost his grip on the handle of the seat, was thrown to the floor on his back and was injured.

In his deposition the bus operator, Brown, corroborated plaintiff as to the position of the bus when plaintiff fell. Brown stated that he had stopped on the near side of 12th Street for the tracks and that just as the bus was crossing them he heard plaintiff fall. At the trial he testified that after stopping for the tracks, the bus proceeded across them to the far side of 12th Street, discharged two passengers and had started up when he first learned that plaintiff "was down" on the floor; that plaintiff then accused him of being "rough in the handling of the coach." In his deposition he testified that he did not stop on the far side of 12th Street as there were no passengers to get off. Brown at no time denied that the bus had jerked. The nearest he came to doing so was his statement "as I approached the intersection at 12th and Washington I stopped for the tracks, then I *gradually* crossed the tracks and stopped at the coach stop on the other side of the tracks. Q. Yes. A. And I *gradually* moved in." (Emphasis added.)

1. *Res Ipsa Loquitur.*

■ Defendants admit the propriety of giving instructions on this subject, but claim that those given were erroneous. Instruction 1 on this subject commences: "From the happening of the accident involved in this case *as established by the evidence* there arises an inference that the proximate cause of the occurrence was some breach of duty required by law on the part of the defendants." (Emphasis added.) Defendants contend that the italicized portion of this instruction took from the jury the right to determine whether there was any unusual motion on the part of the vehicle, the operator thereof having testified to gradually crossing the tracks, which they claim in effect was testimony that there was no "unusual motion" of the vehicle when plaintiff fell. Ordinarily the res ipsa loquitur instruction commences with some such statement as "If, and only in the event, you should find that there was an accidental occurrence *as claimed by the plaintiff* . . ." (See BAJI p. 319.) However, if the evidence establishes without contradiction that an accident happened in the

manner justifying the instruction, with resulting injury to plaintiff, the form used here may be proper. (See BAJI, p. 321.) Here the evidence established without question that the motion of the bus caused plaintiff's fall. Defendants contend that to justify the above portion of the instruction, the evidence must be uncontradicted that the movement of the bus must be "unusual" because it was stated in *McIntosh* v. *Los Angeles Ry. Corp.* (1936), 7 Cal.2d 90, 95 [59 P.2d 959] that passengers must assume the risks from ordinary movements of the vehicle. In the later case of *Mudrick* v. *Market Street Ry. Co.* (1938), 11 Cal.2d 724 [81 P.2d 950, 118 A.L.R. 533], the Supreme Court pointed out (p. 733) that there was no question in the McIntosh case involving the res ipsa loquitur rule. In holding in the Mudrick case that the movement of the vehicle causing the injury does not have to be "unusual" to justify the application of the doctrine the court quoted with approval from *Steele* v. *Pacific Elec. Ry. Co.*, 168 Cal. 375 [143 P. 718], "if injury 'come from the movement of the car by those in charge of it . . . the law then presumes, *prima facie,* that the particular thing thus shown to have caused the injury was due to the defendant's negligence, and the burden is thrown upon the defendant to disprove the *prima facie* case thus made,' '' pointing out that both that case and *Wyatt* v. *Pacific Elec. Ry. Co.*, 156 Cal. 170 [103 P. 892], were authority for the proposition that the movement of the vehicle did not have to be "unusual." In *Jorgensen* v. *East Bay Transit Co.* (1941), 46 Cal.App.2d 189 [115 P.2d 556], there is language that would seem to conflict with the rule above stated. However, the language is based upon *McIntosh* v. *Los Angeles Ry. Corp., supra,* 7 Cal.2d 90, which the Supreme Court said in *Mudrick* v. *Market Street Ry. Co.,* 11 Cal.2d 724, *supra,* was not a res ipsa case, and did not conflict with the above stated rule.

In *Hardin* v. *San Jose City Lines, Inc.,* 41 Cal.2d 432 [260 P.2d 63], the court criticized the use of similar language to that used in the instruction in question here, for the reason that "there was evidence from which it might be reasonably inferred that no accident in fact occurred . . ." (p. 435). Such is not the situation in our case. It is significant that in the Hardin case the court did not hold that the giving of the erroneous instruction was prejudicial, saying (p. 436): "The erroneous assumption contained in the res ipsa loquitur instruction is indirect and inferential . . ." and that there were other instructions telling the jury there was a dispute

as to whether an accident had occurred. In our case, had there been a question as to whether plaintiff's injury was caused by the movement of the vehicle, the giving of the instruction would still not have been prejudicial. In other instructions the jury were instructed that if the testimony of any witness was contrary to the physical facts such testimony must be disregarded, that defendants contended that the accident was an unavoidable one, that defendants' liability must be determined in the light of defendants' duty as stated by the court, that in order to impose liability on defendants their breach of duty must have been a proximate cause of plaintiff's injury, that if the evidence shows that the injury was caused by defendants' act in operating its coach there is an inference of breach of duty which imposed on defendants the burden of showing that they did exercise the utmost care and diligence, and that if defendants exercised the care required or if any failure of defendants to exercise such care was not a proximate cause of the accident, the verdict must be for defendants.

Defendants find no fault with the balance of the res ipsa loquitur instruction above mentioned nor with the second instruction on the doctrine, other than their claim that both instructions were erroneously premised by the introduction above quoted.

2. *Duty of a Common Carrier.*

■ The court instructed that defendants owed plaintiff the duty of exercising the utmost care in the operation of their motor coach. Then followed the criticized portion of the instruction: "It involves such constant supervision and observation over and of its passengers as will insure accurate information to its employees as to the condition and position of the passengers. The condition and position of the passengers are facts which must be considered by the defendants in operating their motor coach in accordance with the care required under the law." Defendants contend that this portion was argumentative and stated in effect that the Key System was an insurer of its passengers. We make no such interpretation. The word "insure" in the phrase "as will insure accurate information to its employees" in no wise contains the element of insurance of the passengers. Obviously the word "insure" as used here connotes the meaning "provide." The court did instruct that the Key System "were not the

guarantors'' of plaintiff's safety and that ''they did not warrant such safety in the sense of a guarantee.''

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied December 5, 1956, and appellants' petition for a hearing by the Supreme Court was denied January 4, 1957. Traynor, J., was of the opinion that the petition should be granted.